**Opinion filed February 21, 2019**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00037-CR

_____

## JOHN TYLER RUNNELS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 32nd District Court**
**Fisher County, Texas**
**Trial Court Cause No. 3508**

## M E M O R A N D U M   O P I N I O N

The jury convicted John Tyler Runnels of possession of a controlled substance, to wit: heroin, in a drug-free zone in an amount between one gram and four grams. The jury assessed punishment at confinement for twenty years in the Institutional Division of the Texas Department of Criminal Justice. The jury also imposed a $15,000 fine. Appellant presents two issues on appeal. He contends that (1) the evidence is insufficient to affirmatively link him to the heroin and (2) the trial

court erred by denying his requested jury instruction on spoliation of evidence. We affirm.

*Background Facts*

On April 8, 2015, Appellant and his roommate, Nicholas Norman, left Appellant's house in Norman's vehicle. Norman drove, and Appellant rode in the passenger seat. At approximately 11:00 p.m., Fisher County Sheriff J.A. Robinson observed Norman's vehicle pull out of an alley behind a residence where the sheriff's office had recently made a significant drug seizure.[1] Sheriff Robinson attempted to follow the vehicle, but he lost sight of it. Sheriff Robinson subsequently saw the same vehicle in an Allsup's parking lot. After the vehicle pulled out of the parking lot, Sheriff Robinson witnessed a traffic violation and activated his overhead lights to stop the vehicle. Norman stopped next to the Rotan Independent School bus barn, which was within 1,000 feet of the school.

Sheriff Robinson recognized Appellant from a prior encounter. Sheriff Robinson ran a records check for Norman's information. Sherriff Robinson discovered that Norman had prior drug arrests. He asked Norman and Appellant to step out of the vehicle. Norman left the driver's side door of the vehicle open after he exited the vehicle. By this time, Fisher County Deputy Sheriff Billy Spears had arrived to assist Sheriff Robinson. Deputy Spears noticed a hypodermic needle with narcotic residue in the driver's-side door.

Deputy Spears subsequently searched the vehicle while Sheriff Robinson stood with Norman and Appellant outside the vehicle. Deputy Spears found a "metallic pill-bottle type carrier" between the passenger seat and the center console. This container contained a packet of methamphetamine and a packet of heroin. Deputy Spears also found more hypodermic needles and a backpack that contained

---

[1]We will identify the law enforcement officers by the positions that they held at the time of their encounter with Appellant.

2

drug paraphernalia. The backpack also contained an envelope with Appellant's name as the return sender.

After finding the drugs, the officers heard Appellant repeatedly telling Norman that Norman needed to claim the drugs. Appellant also offered to bail Norman out of jail the next morning if Norman claimed the drugs. Norman then told the officers that the drugs and the backpack belonged to him. The officers arrested Norman at the scene and released Appellant. However, Sheriff Robinson suspected that Appellant had some connection to the drugs, and Deputy Spears believed that the drugs and backpack belonged to Appellant.

Deputy Spears interviewed Norman the next day. Norman told Deputy Spears that the contraband was partly owned by Appellant and that Appellant "had been the one that was dealing the narcotics in town." The Texas Department of Public Safety Crime Laboratory tested the substances in the packets and determined that the substances were 2.37 grams of heroin and 0.84 grams of methamphetamine.

The State called Norman as a witness at trial. He testified that Appellant had heroin earlier that day and that Appellant used methamphetamine and heroin with Norman. Norman saw Appellant use heroin more than five times. Norman knew that Appellant sold methamphetamine, but he did not know that Appellant had those drugs in the vehicle with him. Norman testified that he did not have any heroin on him at the time they were stopped. While Norman looked for a spot to pull over, Norman saw and heard Appellant shoving something between the seat and the center console. Norman also testified that the backpack belonged to Appellant.

*Analysis*

In his first issue, Appellant contends that the evidence is insufficient to affirmatively link him to the heroin. Appellant only contests the sufficiency of the evidence with respect to the issue of possession. Appellant asserts that the evidence that connected him to the heroin is insufficient because Norman's testimony was not

3

credible. Specifically, he asserts that the jury should not have relied on the testimony of a witness who struggled with heroin addiction, who did not like Appellant, and who received community supervision for possessing the same controlled substances as Appellant. We disagree.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Norman testified that he had battled with drug addiction off and on for six or seven years and that this time period was hazy because he had been under the influence almost the entire time. He testified that he originally claimed the drugs as his because he was homeless before he moved in with Appellant and did not want to

become homeless again. Also, Norman thought that he would just get out of jail the next day and go home. He eventually told Deputy Spears that the drugs belonged to Appellant because Deputy Spears kept asking Norman why he did what he did. Norman also testified that he does not really like Appellant because of what happened that night.

Norman pleaded guilty and was placed on deferred adjudication for the possession of heroin involved in this case. Norman's agreement with the State was that anything he said in his interview would not be used against him in a criminal case—not that the case would be dismissed or that the State would offer him a deal. Later, Norman was arrested and placed on deferred adjudication probation for possession of methamphetamine. When he testified, both probations were active, but Norman testified that he moved out of Texas at least six months prior, stopped using drugs, got a job, had a pregnant girlfriend, and had no arrests or violations.

As noted previously, Appellant asserts that the evidence was insufficient to link him to the heroin because Norman's testimony was not credible. However, we defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. To the extent that there are inconsistencies in Norman's testimony, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Accordingly, we presume that the jury determined that Norman's testimony linking Appellant to the heroin was credible in assessing the sufficiency of the evidence.

A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2017). Possession is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2018). To prove unlawful possession of a controlled substance, the State must

5

show (1) that the accused exercised control, management, or care over the substance and (2) that the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173 n.32 (Tex. Crim. App. 2015).

Texas courts have used an "affirmative links" analysis for instances when the accused was not in exclusive possession of the place where the substance was found. *Poindexter*, 153 S.W.3d at 406. In this circumstance, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances that affirmatively link the accused to the contraband. *Id.* (citing *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing affirmative links recognized by courts); *see also Tate v. State*, 500 S.W.3d 410, 413–14 (Tex. Crim. App. 2016) (citing *Evans*, 202 S.W.3d at 162 n.12). The following links have been applied to infer knowledge relating to the contraband: (1) the defendant's presence when a search was conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Tate*, 500 S.W.3d at 414 (citing *Evans*, 202 S.W.3d at 162 n.12). It is not the number of links that is dispositive; rather, it is the logical force

6

of all of the evidence, both direct and circumstantial, that is the determining factor. *Evans*, 202 S.W.3d at 162.

Although Appellant was not in exclusive possession of the place where the drugs were found, the independent facts and circumstances justify the jury's conclusion that Appellant had possession of the heroin and that he knew the substance was heroin. We start our analysis with Norman's testimony that Appellant had knowledge of and control over the heroin. Additionally, Appellant was present when Deputy Spears searched the vehicle. The heroin was found in close proximity to the passenger seat where Appellant was sitting. Deputy Spears found drug paraphernalia in what appeared to be Appellant's backpack as well as in other places in the vehicle. Based on the evidence affirmatively linking Appellant to the heroin, a rational jury could have found beyond a reasonable doubt that Appellant intentionally or knowingly possessed the heroin. We overrule Appellant's first issue on appeal.

In his second issue, Appellant contends that the trial court erred by denying his requested jury instruction on spoliation of evidence. Appellant asserts that he was entitled to this instruction because the State was unable to provide the video recording of his encounter with Sheriff Robinson and Deputy Spears. Appellant contends that the trial court erred by refusing to give the instruction because video evidence is "very good evidence," the absence of this video evidence leaves a void in the case, there was no written policy regarding the handling of video evidence, and the policy that was in place was not followed. We disagree.

Sheriff Robinson testified that his in-car video recorded the stop of Norman's vehicle and that the video would probably show Appellant's statements to Norman. However, the State could not produce the video at trial. The sheriff's unwritten policy for preserving in-car video evidence was for the chief deputy to download the video and make two copies, placing one in the original file folder and sending the

other copy to the district attorney's office. Sheriff Robinson informed the deputies of this policy when they were hired and throughout their tenure as deputies. Sheriff Robinson testified that he turned the in-car video over to the chief deputy and that he does not know what happened to the video afterwards. Sheriff Robinson was not aware of another case where the video was lost by his department.

Deputy Spears and Sheriff Robinson could only remember the general nature of the communication regarding Norman claiming the drugs. Deputy Spears agreed that the video would have helped the jury determine Appellant's demeanor when talking with Norman. Sheriff Robinson also agreed that there was a void of information without the video.

At the charge conference, Appellant requested a spoliation instruction, and he provided the trial court with the specific language to be included in the charge. Appellant initially asserted that "the standard, bad faith, is too high and unconstitutional" and "that the civil standard should apply in this case" for a spoliation instruction. Appellant also asserted that there was bad faith because (1) the video was recorded, (2) it would be useful in this case, (3) regular testimony is not as concrete and may be misleading, (4) there was a void in the evidence without the video, (5) there was no written policy or regular training concerning the care of in-car videos once they had been created, and (6) the State did not follow the unwritten policy. The trial court denied Appellant's request.

A review of alleged jury-charge error involves a two-step analysis. *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005); *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994). First, we must determine whether error actually exists in the charge and, second, if error does exist, whether sufficient harm resulted from the error to require reversal. *Ngo*, 175 S.W.3d at 743–44; *Abdnor*, 871 S.W.2d at 731–32. If the defendant preserved error by timely objecting to the charge, an appellate court will reverse if the defendant demonstrates that he suffered

some harm as a result of the error. *Sakil v. State*, 287 S.W.3d 23, 25–26 (Tex. Crim. App. 2009). We review a trial court's decision not to submit an instruction in the jury charge for an abuse of discretion. *See Wesbrook v. State*, 29 S.W.3d 103, 121–22 (Tex. Crim. App. 2000).

Spoliation of evidence concerns the loss or destruction of evidence. *Torres v. State*, 371 S.W.3d 317, 319 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd). The duty to preserve evidence is limited to evidence with an apparent exculpatory value before the evidence was destroyed. *White v. State*, 125 S.W.3d 41, 43 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd). A defendant must affirmatively show that the lost evidence was favorable and material to his defense. *Id.* at 44. When the spoliation concerns potentially useful evidence, the defendant bears the burden of establishing that the State lost or destroyed the evidence in bad faith. *Ex parte Napper*, 322 S.W.3d 202, 229 (Tex. Crim. App. 2010). The United States Supreme Court has held that, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

Bad faith is more than simply being aware that one's action or inaction could result in the loss of evidence; bad faith entails improper motive, such as personal animus against the defendant or a desire to prevent the defendant from obtaining potentially useful evidence. *Ex parte Napper*, 322 S.W.3d at 238. To find bad faith, there must be some evidence from which an inference of bad faith can be drawn. *Id.* When conduct can, at worst, be described as negligent, the failure to preserve evidence does not rise to the level of a due process violation. *Youngblood*, 488 U.S. at 58.

There is no evidence in this case that the State lost or destroyed the in-car video in bad faith because there is no evidence of an improper motive in the form of a personal animus against Appellant or a desire to suppress exculpatory evidence.

9

Appellant's assertion that the State failed to follow its unwritten policy regarding the preservation of an in-car video does not rise to the level of bad faith. Therefore, the trial court did not err by refusing to submit Appellant's requested spoliation instruction to the jury. We overrule Appellant's second issue on appeal.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

February 21, 2019

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[2]

Willson, J., not participating.

---

[2] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.